Good morning, Your Honor. Eric Daly for Appellants. I would like to reserve some time for rebuttal. May it please the Court, the District Court created a paradox by holding that the intent of Assembly Bill AB-578 was to remove one disclosure requirement from Section 147 by adding another disclosure requirement in Section 440. The District Court held that the rationale in Delmu would be controlling with respect to Section 147. In other words, that Section 147 would apply to umbrella policies, quote, if the Nevada legislature had not taken immediate action to amend Section 145 after the Delmu decision, close quote. The Order then states its fundamental misunderstanding that appellants' construction would require underinsured motorist coverage, quote, under Section 147, but explicitly excluding such coverage under Section 145, close quote. Quote, respectfully, appellants' construction would not require underinsured motorist coverage in umbrella policies under either Section 147 or 145. 147 applies to liability coverage only. 145, as amended in combination with Section 440, simply requires disclosure if underinsured motorist coverage is not being offered. Herein, it was not offered or disclosed. It was a fundamental misunderstanding because the District Court proceeded to construe Section 147 to avoid what was tantamount to a straw man inconsistency. Then the District Court compounded its fundamental misunderstanding of appellants' position with the fundamental misunderstanding that the legislative intent in adopting Assembly Bill 578 was at least in material part to erase the non-existent inconsistency between Sections 147 and 145 by eliminating the duty to disclose the named insured exclusion in umbrella policies. The choice the legislature actually confronted was whether to require insurers to offer underinsured motorist coverage with umbrella policies. It chose not to require the coverage to be offered, but never intended to allow non-disclosure. It is clear from the legislative history of AB 406, the actual legislative history for Section 147, that when a layperson purchases liability coverage, they reasonably assume that named insured coverage is included. Therefore, the legislature concluded that exclusion of named insured coverage without disclosure is deceptive. The District Court committed reversible error when it held the named insured exclusion had to be disclosed for primary policies, but inconsistently not for umbrella policies because that reasonable expectation is no different whether the insured is buying a primary or umbrella policy. Because the District Court analyzed the application of Section 147. Let me stop you there, because I'm not sure conceptually I'm on the same page. My understanding of an umbrella policy is that it is more outward directed. What's the basis for your statement that somebody buying an umbrella policy assumes that it applies to himself? Because the legislative history of Section 147 makes clear that the legislature believes that a layperson thinks that liability coverage includes coverage for their loved ones, for the people they live with, for the person most likely to be making a claim under the policy. Is there something uniquely that ties that understanding to an umbrella policy? No, that's the point, is that the understanding, it's not as if the layperson thinks, well, I'm buying a primary policy, so I have underinsured motorist coverage, but I'm buying an umbrella policy because it doesn't. The legislative history actually states the layperson has no idea that named insured coverage is not included. That's why they felt that it was deceptive if it's not disclosed. Because the district court analyzed the application of Section 147 to umbrella policies solely by considering the legislative intent of AB 578 to the exclusion of the legislative history of AB 406, the district court made what we contend are multiple errors or omissions as follows. First, it ignored the fact that the named insured exclusion clearly is deceptive unless disclosed, and indeed was considered to be, quote, the biggest problem with existing insurance at the time. Second, it misconstrued AB 578 because Section 440 was a clear expression the legislature did not want deceptive exclusions without disclosure, even in umbrella policies. In fact, the title of Section 440, which is in the addendum at page 6, confirms that its focus was on, quote, disclosure, close quote. Third, it gave little or no consideration to the fact that the legislature knew the operative language in the two statutes was indistinguishable, and even though it noted that the legislature, quote, declined to amend Section 147, close quote. Fourth, the order concluded harmony was the key to its analysis, but ignored the disharmony it created in the disclosure requirements between Section 147 on the one hand and Sections 440, 145, and 690B, Section 20 on the other hand. Fifth, the order failed to recognize that in Nevada, if there is more than one reasonable construction of an insurance statute, the court must adopt the interpretation which results in coverage. Under Appellee's construction, the named insured exclusion can be enforced in both primary and umbrella policies. It just has to be disclosed in both types of policies. Therefore, the holding that Section 147 stopped applying to umbrella policies when AB 578 was adopted must be reversed, because when both related parts of AB 578 and the legislative history of 406 are taken into account, it is clear the legislature did not intend to allow enforcement of the misleading named insured exclusion without disclosure even in umbrella policies. AB 578 did not. Is an umbrella policy a policy of motor vehicle insurance under Nevada law? It is, Your Honor, because in Delmu, the court held that when a statute includes the phrase covering the use of a private passenger car, it applies to umbrella policies unless there is an express exception in the statute. The district court held that that language would be controlling but for AB 578, and it is clear that the operative language in 147 and 145 were indistinguishable. AB 578 did not create the option to exclude named insured coverage from umbrella policies or remove the duty to disclose. With respect to underinsured motorist coverage, Appellee argues that, quote, the individual, close quote, must be construed consistent with, quote, an insured, close quote, in 690B Section 20. The district court concurred that- Stop here just a minute, because I'm processing what you just said. So you're saying that the Nevada law is absolutely clear that an umbrella policy is not a policy of automobile insurance, period? No, I'm saying that it is a policy of automobile insurance. Oh, excuse me. I misrepresented what you said. You're saying it is, and that's absolutely clear in Nevada law? It is absolutely clear that the Delmu decision held that that operative language means it applies to- That's an interpretation. I'm saying there's no case in Nevada that says flat out that an umbrella policy is a policy of automobile insurance. Delmu says that. Was the law changed after Delmu? Well, that was Assembly Bill 578, which included the two parts, the addition of Subsection 5 to Section 145, but it also included Section 440, the disclosure requirement. That's why the district court held that Delmu would be controlling but for that new law. But the decision in Delmu was that if the operative language is the same, it applies to umbrella policies unless there's an express exception, and even the district court acknowledged that AB 578 did not add any such express exception to Section 147. The language remained unchanged in that statute. The district court concurred that Section 145 and Section 20 had to be construed, quote, But appellants contend that even if, quote, the individual, close quote, has no unique meaning because these statutes must be construed in harmony, that they must be construed harmoniously both upon issuance and upon renewal. Indeed, although Sections 20, 440, 145, and 147 all allow for exclusions of coverage, it is incorrectly argued that 440 and only 440 can be ignored upon renewal. Pelley all but ignores the renewal argument, and the district court overlooks it completely. But by trying to make Section 440 harmonious with one related statute on issuance, while ignoring the renewal issue, the district court caused disharmony upon renewal. Section 145 clearly applies on issuance and also provides that, quote, each renewal must include a copy of the form offering such coverage. The point of Section 440 is that for an umbrella policy, the form can be a disclosure instead of an offer. Appellant's interpretation creates even more harmony than the order's interpretation because it would render Section 440 not only consistent with Section 20, but with all related statutes and at all times. Reason and public policy are further on the side of appellants because it would be unreasonable to infer the Nevada legislature intended Section 440 to be consistent with Section 20 at the cost of rendering Chapter 687 be internally inconsistent, particularly when the two statutes can be construed consistently without rendering 687 be internally inconsistent. If it's a matter of public policy, should you get a benefit from a policy that you don't pay the premium for? Yes, Your Honor. It's clear law in Nevada. The Ippolito case specifically held that. And, in fact, Section 145, Subsection 2 and 3 clearly provide that if the must-offer requirements are not met, the coverage must be implied into the policy, similar to what Ippolito said. And, in fact, Subsection 1 of 145 likewise imposes three requirements. One, the anti-stacking language has to be clear, it has to be prominent, and you have to get the anti-stacking discount. So even if you haven't paid the coverage, if the language is not clear or prominent, it still must be read into the policy. So Nevada law is clear on that point. But the statutes can be interpreted to provide that insurers can exclude underinsured motorist coverage from rubella policies if, but only if, the exclusion is disclosed upon issuance and, again, upon renewal. The district court ignored its own admonition at page 174 of the excerpts that the legislative intent should take into account, quote, the chapter as a whole, close quote. The district court cited the Benegas case for that proposition. We would also submit that the district court clearly committed reversible error when it ignored the genuine dispute of material fact about whether Apelli waived the named insured exclusion. Finally, Apelli incorrectly argues at pages 30 and 35 of its brief that the, quote, UIM disclosure line on the application is virtually identical to the language, close quote, required by Section 440. But we would submit that you don't analyze lines of a document in isolation, you analyze the document as a whole. This document appears in the excerpts in at least two places, pages 63 and 107. The disclosure is part of the same document as the application. The whole document states that it has an effective date in July 2004, and in the upper right-hand corner an expiration date on the renewal date in July 2005, as we have been saying. The underlying accident happened in August 2005, clearly after the renewal date. It is respectfully submitted that the Nevada Supreme Court would hold that Appellant John Bonner cannot be denied first-party underinsured motorist coverage on the basis of a disputed expired disclosure, which he had never seen and for what it's worth had no reason to know existed before his life-changing injuries. Thank you, Your Honors. May it please the Court, my name is Riley Clayton, and I represent State Farm. And I can tell you that when you have the opportunity to brief and argue a million-dollar case, it's either a million dollars or it's not, it's still pretty exciting, so I appreciate the opportunity to present my argument here. The issue that we're trying to advance here is that NRS 687B-145 does not apply to a plup. There's two portions of the argument that I want to make to this Court. One is the liability side, and then the next is the UIM side. NRS 687B-145 requires a disclosure when an insurance company wants to enforce a named insured or a household exclusion. The important part that I want the Court to focus on is that it does not apply to a plup. All of the legislative history that went to the passage of NRS 687B-145 involves standard automobile policies. Not to plups, not to household insurance policies, homeowners' policies, not to renters' policies, not to CGLs. It only involved the disclosure that would happen in a standard automobile context. You want to repeat that again, 145D? NRS 687B-145 requires a disclosure when you're going to enforce a named insured exclusion, but it says that you need to do it in the context of a policy that provides coverage for motor vehicle insurance. The legislative history relating to that particular statute solely involves a standard automobile policy. There is no discussion in that history regarding homeowners' policies, umbrellas, commercial general liability policies, renters' policies. It was only done in the context of the standard automobile policy. For that reason, I do not think that the disclosure that is required where you say we have a named insured exclusion in our policy would transfer over to the plup. Now, one of the great mis- Is there a reason why, stated in the legislative history, or that you can explain to us why this rule as you, this conclusion as you state it should hold true? Is there a policy reason? The policy reason is, generally speaking, you're involved, you're in your car with many of your family members and those in your households. And those types of liabilities, when mom makes an error driving the car and injures a child or some of the kids in the car or the father does, there's usually family members and the chance for collusion in that particular context is heightened. Whereas when you're talking about a plup policy or an umbrella policy, you don't necessarily even get to exposures of that nature until you've extinguished the underlying particular issue. And also, it extends to other types of coverages outside of an automobile context. And if you read closely or carefully the points that were drawn by all the people who were debating that legislation, it was in the context of the automobile policy only in the likelihood of family members to be involved in those types of accidents. And for claims in that situation to result where they wanted to impose upon the carrier the obligation of identifying to the insureds, hey, you're not going to have coverage if you do not, or because there's a named insured exclusion in this policy. They wanted to protect against that. It doesn't go so far to other types of policies, including the umbrella. Now, one of the points that was raised by the insureds in this case is that the Delmu case somehow controls, or the Delmu case somehow identifies that a policy of motor vehicle insurance under NRS 687B.145 is the same thing as the similar language in NRS 687B.147. And I'm going to submit to you that it's not for these two reasons, or three reasons. First, the Delmu case never discussed NRS 687B.145. Pardon me, NRS 687B.147. But NRS 687B.145, is the language materially different? It is materially different, because it says, a policy of motor vehicle insurance covering a private passenger car. The only part that is consistent is covering a private passenger car. What is not in both statutes is the foregoing language that says, a policy of motor vehicle insurance. And that's why I don't think what happened in Delmu has any application to the disclosure requirements in 687B.147. So it's the omission of those. I mean, 145, Delmu is interpreting the phrase, quote, a policy of insurance covering the use of a passenger car. That is correct. And 147, policy of motor vehicle insurance covering a private passenger car. So there is some distinction in the language. But I don't think Delmu has any application to .147, and the reason being is that it has always been the Nevada legislature's position that liability and first-party UIM coverages are different. There's totally different rules of law that applies to a first-party coverage compared to a third-party type of context, number one. Number two is that if the Nevada Supreme Court thought that policy covering a motor vehicle, the language for 145, that that was somehow in existence for 147, that those two meant the same, well, they got it wrong. And the Nevada Supreme Court got it wrong. Because moments after... As a matter of Nevada law, that doesn't help us. We follow the decisions of the Nevada Supreme Court. We don't review their decisions or second-guess their decisions. I understand that, Your Honor. But the point is, in direct negative reaction to the way the Nevada Supreme Court thought policy of motor vehicle insurance under 145 was meant to be construed, they came back and said, no, you got it wrong. A lot of legislature changed it. They came back and said, we never intended that. And that's when I think when you look at NRS 687B.147, it holds true. The Nevada Supreme Court in Delmu had it wrong. It has always been the Nevada Supreme Court's, excuse me, the Nevada legislature's intent to say that a policy of motor vehicle insurance covering a private passenger car is the one that is specifically issued for a standard automobile insurance policy. How did the Nevada legislature change the law after Delmu? What they did is they took about two or three related statutes. One was NRS 687B.440, and they carved down an exception saying umbrella policies, excess policies are not UIM policies that are issued under a standard motor vehicle insurance. And that was in reaction to Delmu. That was one of the reactions. The other was in 687B.145, where they specifically carved out an exception for umbrella policies, excess policies, and other similar policies from the must-offer requirements of underinsured motorists or uninsured motorist coverage. So the legislature knew what it wanted to do by carving out the exceptions for umbrella policies and not tie them into standard automobile policies. There's a clear distinction that the legislature wanted to make the Nevada Supreme Court aware of when a direct negative response to the Delmu case come and did that. So it is State Farm's position that the named insured exclusion, which has been enforced in at least three reported decisions of the Nevada Supreme Court, is enforceable, that it does not need to comply with the disclosure requirements that are required for automobile policies, and that the named insured exclusion in the umbrella should be enforced in this particular case. Now let's get to the UIM uninsured or underinsured motorist equation. Now... The interesting thing about this case, or the theme that we try to develop in the trial court below and hopefully here on appeal, is that he wants the Mr. Bodnar wants to take the benefits of the policy that was purchased for him by Mr. Repke, potentially have all the benefits that would be inure under the policy, but repudiate things that may not inure to his benefit. Now the statute is clear as to what is required for liability umbrella policies to take them out of this must-offer requirement. You need to identify to them that, hey, your policy does not include underinsured or uninsured motorist coverage, and then have a signature establishing that that type of coverage does not exist. That is exactly what happened in this case. There is no dispute on that issue. Repke, who went in and purchased the policy, went into a state farm agent, sat down with the agent, discussed coverages, signed the application, signed the waiver form that is identical to the one that you find is required in the statute. Mr. Bodnar, unfortunately, is injured by an accident caused by Mr. Repke and seeks coverage. The person who purchased the policy for him did not even include. Is the premium different because it contains a second named insured? There's no difference there. What is different is when you tack on a million dollars' worth of UIM coverage, the premium is going to be extremely significant. That's why, for many reasons, these many insurance companies in Nevada, including State Farm, have eliminated placing underinsured and uninsured motorist coverages on their umbrella policies. They are very expensive. The payouts are significant, and that is why many of them have retreated. And the legislature has allowed them to do that by exiting the disclosure form under NRS 687B.440. Now, I pointed to this court three or four decisions that say that the signature of one is sufficient to bind all those who may potentially qualify as insureds under that policy. Not a single case has been represented by the insurers in this particular case that would reduce or eliminate even the persuasiveness of these other cases. Those cases that have looked at it, they suggest that it doesn't make practical sense for an insurance company to go out and track down any person who could ever potentially be insured under that policy and have them execute a waiver. The Nevada legislature's disclosure form only requires a single signature. There's not a place for multiple locations where multiple insureds need to sign a form, and that just makes practical sense. That sounds good, and I read it in your briefs. What was troubling me is the procedure. If someone comes into the office and says, I want to buy an insurance policy, and it includes an umbrella policy, and he or she is the person who calls the named insured. In other words, the company doesn't say, oh, named insureds are A, B, C, D. It's the person buying the policy. What's the problem with State Farm or any other insurance company saying, whoa, you want to insure A, B, C, D, well, they're going to have to come in and sign this? You said you have to track them down. What I'm saying is I'm not too sure that argument makes a lot of sense, in the sense that the insured is the one who calls who should be on the policy. Let me give the Court a different example. It may not be as difficult when you're talking about a husband and wife. They can perhaps both go down to the local agent and both sign the disclosure. What happens if you're UPS? What happens if you're a fleet carrier? What happens if you're a partnership in my firm who happens to be responsible for insuring his runner and all the people who are going out on depositions? It does not make practical sense for all those persons to come in and sign that waiver. It's not required by the statute, Your Honor. Because the applicant is the one who's buying the policy. The applicant is the one who's buying the policy. The applicant can choose who is going to get coverage on that particular policy. But the moment that happens, one of the beneficiaries simply can't repudiate what the other person did in purchasing that policy. If he wants or she wants to go get his or her own coverage, let them go and do that. But the fact of the matter is in this case, Mr. Reckie went and purchased on their joint behalf an umbrella policy, and on their joint behalf executed the statutory disclosure form that requires a single signature. The case law that we have cited establishes that that is sufficient legally to bind any other insureds under that particular policy. There was some interesting language in each of these cases that talk about the practical effects, and it's just not something that State Farm is advancing in this particular case. It's something that's been recognized judicially in other opinions, and that's why we included them and brought them to the Court's attention in our briefs. So in sum, if there's any other questions that the Court would have for me, NRS 687B.145 solely applies to standard automobile policies, does not apply to plubs, and that is confirmed because the legislative history does not talk about it. It only talks about standard automobile policies. It is because the Delmu decision, which attempted to provide definition to that term or similar term, policy of motor vehicle insurance, got it wrong. The Nevada legislature then came in and said, no, this is what we mean when we say policy of motor vehicle insurance. And it does not mean access or umbrella policies. Therefore, this disclosure requirement that's trying to be foisted upon the umbrella carrier should not exist in this case. Likewise, because the statutory disclosure form for the UIM coverage has been signed by an insured, that should be sufficient to bind all those who may potentially benefit under that policy. Thank you. Thank you. Rebuttal. Thank you, Your Honors. In the appellee's brief at page 21, they state that the definition of a, quote, policy of insurance covering the use of a passenger car, close quote, is essentially identical to that found in Section 147. Now they apparently are contending the language is not indistinguishable. Additionally, they seem to be arguing that Section 147 never applied to umbrella policies, but also that the legislature expressed a clear intent to and change its application to umbrella policies. These positions are inconsistent. I also heard repeated references to the legislative history of Section 145. I didn't find any legislative history of Section 145. There is legislative history for 147. The district court determined legislative intent, but not from legislative history. Are you talking about the amendment of 145? Yeah, I don't see any legislative history for it in the record. Maybe I missed it. I see legislative history for 147. Are you saying that somehow that amendment did not respond to Delamue? I'm saying it did respond to Delamue, but it didn't respond to change the definition of private passenger car. What it did do was to say that the insurance companies already have the option to exclude named insured coverage, subject to the right of insurers to reject the named insured exclusion. But what didn't exist before that new legislation was the option to exclude underinsured motorist coverage. So they were trying to make it consistent. You can exclude the named insured coverage. Now you can exclude the underinsured motorist coverage also. That was the change that was made, and the legislature had at least two very clear options if it didn't want 147 to apply across the board. It could have added language in 147 that said this doesn't apply to umbrella policies. It could have adopted a separate section in Section 687B that just said none of these statutes apply to umbrella policies. 147 does not have language, though, that says umbrella. It just has language of motor vehicle insurance. Is that right? Yes. It has the same operative language in 145 and 147. That's why the district court agreed that but for the amendment, the language of DELMU or the rationale of DELMU would require application of 147 to umbrella policies. I didn't hear any dispute that the application contains an expiration date. Didn't hear any discussion, I don't believe, about the implications on renewal. And I agree with Your Honor that the argument that you would have to track down every potential insured is a straw man argument. We never made that argument. The argument on that issue is that the people who are named on the policy ought to be required to disclose it. When Mr. Repke goes in to buy the coverage, Mr. Bodner has no idea that a disclosure, that uninsured motorist coverage is never going to be presented because, as the legislative history of Section 147 clearly states, the insured has no idea that such coverage would be excluded. That is clearly discussed. Does the insured have any idea that the policy is being bought if he's not there? Mr. Repke is buying the policy. He knows the policy is being bought. Not necessarily. Well, let's put it, in this case, okay, it's clear from the record that he was aware the policy is being bought, but it seems Certainly in many cases you aren't. And do you make law according to the idiosyncrasies of who may be aware of what? No, Your Honor. I would agree that you don't. But I think that the person who doesn't sign the disclosure is entitled to assume that it's going to include what a reasonable layperson would assume. If that person knows that the policy exists. If that person cares that the policy exists. Right. That presents an additional argument. I would suggest, Your Honor, that in those cases where somebody doesn't even know the policy exists,  They're getting significant coverage without any idea they're getting coverage. Should they get more than is being paid for? The Nevada Supreme Court has been clear on that in the Ippolito case. And the legislature, as I said earlier, has specifically provided in It speaks to a slightly different situation. The question isn't whether when the statute requires an explicit exclusion and signed waiver, whether that gets enforced by saying, Well, then we're going to say that you can't apply the exclusion. In this case, when you have an application signed by only one of two insureds, Is there any reason to say the other person gets the benefit of the signature to obtain the insurance, But doesn't get the liability of the signature that recognizes the exclusion? Yes. Our argument would be that Mr. Bodner would assume that the policy would include the coverages a layperson would expect, And because this is a deceptive exclusion, which the legislature has completed He didn't sign the application. He elected not to participate in the acquisition, So why is it his specific knowledge of what's included and what's not included  Because he did not know a named insured exclusion would be disclosed at the time of application. He had no reason to know it. That still doesn't tell me why the signature of his agent shouldn't be binding upon him. Well, as I stated, even if the court gives the phrase, quote, the individual, close quote, in the amendment, No unique meaning, even though the court had multiple examples, as I said earlier, Of the phrase insured or uninsured or the insured, The legislature specifically provided that the individual must sign the disclosure. So it seems to me that when it uses a unique term, it should be given a unique meaning. Okay. We thank you for the argument. Thank both counsel for the argument. That case just argued is submitted. The last case of today's calendar has been voluntarily dismissed. So that concludes the arguments for today. And we're adjourned. Thank you.
judges: Brunetti, Clifton, Roth